UNITED STATES DISTRICT COURT **03-21637**
SOUTHERN DISTRICT OF FLORIDA

CIV-MARTINEZ

CASE NO. _____

MAGISTRATE JUDGE
DUBÉ

IN RE: Letter of Request from Liechtenstein
For Assistance in the Criminal
Matter of Jeffrey B. Collins

_____/

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER

This memorandum is submitted in support of the application of the United States for an order

requiring persons within the jurisdiction of this Court to provide testimony and evidence requested

by the High Court of the Principality of Liechtenstein for use in a criminal proceeding in

Liechtenstein and appointing a commissioner to collect it. The application is based upon the

attached letter of request. As set forth in the letter of request, the High Court has commenced a

criminal proceeding in Liechtenstein against Jeffrey B. Collins.

The District Court of the United States for the Southern District of Indiana, Indianapolis,

charged and convicted Jeffrey B. Collins on charges of distribution of 14,000 kg of marijuana.

Collins was sentenced on April 2, 1999, and is presently serving 23 years' imprisonment.

According to the request, the indictment charges that the assets located in the Principality of

Liechtenstein represent proceeds from the drug trafficking charges in Indiana, and that the valuables

in the safes were likewise procured from the proceeds of drug trafficking operations, and are

therefore subject to forfeiture because they derive from a crime against the Law on Narcotic Drugs.

The High Court of Liechtenstein requests to interview a witness residing in Plantation, Florida in

reference to real estate transactions the witness conducted with Collins, from which Collins obtained



significant profits. The interview should be conducted according to the list of questions provided on the request.

This Court, pursuant to its statutory and inherent authority, may (1) order that persons within this district shall provide the evidence requested for use in a proceeding in a foreign country, (2) appoint a person to gather such evidence, and (3) establish the procedure pursuant to which the evidence requested shall be produced.

1. Authority to grant a foreign request for assistance

Title 28, Section 1782, provides in pertinent part that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign . . . tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign . . . tribunal or upon the application of any interested person . . . .

Section 1782 was enacted:

> . . . to improve United States judicial procedures for . . . obtaining evidence in the United States in connection with proceedings before foreign and international tribunals . . .
>
> .

Sen. Rep. No. 1580, 88th Cong., 2d Sess. 1 (1964), reprinted in 1964 U.S. Code Cong. & Admin. News 3782 [hereinafter 1964 U.S.C.C.A.N.]. By enacting Section 1782, Congress reaffirmed the inherent authority of district courts to grant foreign judicial assistance. In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago, 648 F. Supp. 464 (S.D.Fla. 1986), aff'd, 848 F.2d 1151, 1154 (11th Cir. 1988), cert. denied, 488 U.S. 1005 (1989) [hereinafter Trinidad and Tobago]. More significantly, its enactment reflected Congress' desire to increase the power of district courts to respond to foreign requests for judicial assistance. In re Letters Rogatory from the

2

Tokyo District, Tokyo, Japan, 539 F.2d 1216, 1218 (9th Cir. 1976) [hereinafter Japan I]. In sum, Section 1782 is a Congressional invitation to district courts to affirmatively act to execute foreign requests for judicial assistance.

a.      Source of the foreign request for assistance

Foreign requests for judicial assistance may be made by a foreign court or tribunal, including an investigating magistrate or juge d'instruction. In re Letter of Request from the Government of France, 139 F.R.D. 588, 590-591 (S.D.N.Y. 1991) [hereinafter France]; In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 405-406 (S.D.Fla. 1987) [hereinafter Haiti]. Foreign requests may also be made by "any interested person," such as a foreign legal affairs minister or public prosecutor. In re: Letters Rogatory from the Tokyo District Prosecutor's Office, Tokyo, Japan, 16 F.3d 1016, 1019 (9th Cir. 1994) [hereinafter Japan II]; In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 690 (D.C. Cir. 1989) [hereinafter United Kingdom]; Trinidad and Tobago, 648 F.Supp. at 466-67.

b.      Purpose for the foreign request for assistance

Foreign requests for judicial assistance must be for the purpose of securing evidence "for use in a proceeding in a foreign . . . tribunal." This includes evidence needed in proceedings before investigating magistrates as well as in proceedings before conventional courts. 1964 U.S.C.C.A.N. at 3788; Haiti, 669 F. Supp at 405-406. Section 1782 contemplates that district courts will facilitate evidence gathering prior to litigation; Congress amended Section 1782 to eliminate the need for a "pending" proceeding with the intention of expanding the availability of U.S. judicial procedures for obtaining evidence in the United States in connection with proceedings before foreign tribunals.

Even so, where no proceeding before a foreign tribunal is currently pending, district courts should consider whether a proceeding can reasonably be expected to commence. As Judge (now Justice) Ginsburg explained:

> [T]o guard against abuse of section 1782, the district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time.

United Kingdom, 870 F.2d at 692.

> 2. Authority to appoint a commissioner

Section 1782 further provides in pertinent part that:

> The district court . . . may direct that the testimony or statement [of a person who resides or is found within the district] be given or the document or other thing be produced, before a person appointed by the court.

A district court customarily appoints or "commissions" a person ("commissioner") to collect evidence on behalf of the district court and authorizes the commissioner to submit the evidence collected to the requesting foreign court or authority. With requests for assistance in criminal matters, a district court typically appoints an Assistant United States Attorney as commissioner. However, a district court also may commission a foreign authority together with (or in lieu of) an Assistant United States Attorney. See, e.g., In re Letter of Request from the Supreme Court of Hong Kong, 138 F.R.D. 27, 29-30 (S.D.N.Y. 1991) [hereinafter Hong Kong].

Application to a district court for appointment of a commissioner to execute a foreign request for judicial assistance is handled ex parte. United Kingdom, 870 F.2d at 688; Japan I, 539 F.2d at 1219.

3.  <u>Authority to establish the evidence-collecting procedure</u>

Section 1782 further provides in pertinent part that:

> To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

A district court empowers a commissioner to collect the evidence using the procedure prescribed by the court. A district court has "complete discretion in prescribing the procedure to be followed." <u>1964 U.S.C.C.A.N.</u> at 3789. When a district court's order fails to specify a procedure by which a commissioner is to collect the evidence, the Federal Rules of Civil Procedure apply. <u>Japan II</u>, 16 F.3d at 1019; <u>Hong Kong</u>, 138 F.R.D. at 32. However, as Section 1782 makes clear, when a district court does specify a procedure other than one in accordance with the Federal Rules of Civil Procedure, the alternative procedure shall apply. <u>France</u>, 139 F.R.D. at 590-591.

a.  <u>Commissioner's subpoena</u>

If a district court so orders, a commissioner may use the attached form, entitled commissioner's subpoena, to obtain the requested evidence. <u>See, e.g., United States v. Erato</u>, 2 F.3d 11, 12-13 (2d Cir. 1993) (incorporating in pertinent part the district court's order directing the use of commissioner's subpoenas). The commissioner's subpoena is a creation of neither the Federal Rules of Criminal Procedure nor the Federal Rules of Civil Procedure, but is an order of the district court for the production of evidence in accordance with Section 1782. <u>See</u> 28 U.S.C. 1651. Upon authorization by a district court, a commissioner may issue such commissioner's subpoenas as are necessary to execute the request in the relevant district.

b.      Notice of evidence taking

If a district court so orders, a commissioner may collect the evidence in accordance with procedures -- including those involving notice -- requested by the requesting court or authority.[1] In the absence of a request for a specific procedure, a district court can assume that the requesting court or authority has provided such notice as the foreign law requires, or that the foreign law does not require notice and the requesting court or authority does not consider notice to be necessary or useful. In sum, if the requesting state has not requested notice, no notice need be provided. Accordingly, to the extent that a request does not ask for specific notice procedures, a district court should authorize a commissioner to take the evidence without notice to any party other than the recipient of the commissioner's subpoena.

4.      The Present Request

Based upon the facts set forth in the letter rogatory of request from the Public Prosecution Service of the Principality of Liechtenstein, the request is clearly one contemplated by Congress when, in enacting Section 1782, it expanded the authority of federal courts to assist foreign tribunals.

---

[1] Historically, United States authorities have executed requests for judicial assistance in criminal matters without notification to actual or potential targets of investigations, or even to parties in proceedings, in order to protect against compromising foreign investigations and proceedings. Moreover, United States authorities customarily rely on the requesting courts and authorities to provide such notice directly to the relevant parties as foreign law requires. Finally, requesting courts and authorities routinely request that United States executing authorities follow particular, stated notice procedures when such procedures are necessary or useful under the foreign law or practice. For example, foreign requests frequently ask (1) that a person to be interviewed (generally a defendant or suspect) be given notice of applicable testimonial privileges (e.g., against self-incrimination) at the time of the interview and (2) that a defendant and defense counsel be permitted to be present during the taking of testimony of a witness and be given sufficient notice to make arrangements.

6

Congress intended that the United States set an example to other nations by making judicial assistance generously available. Trinidad and Tobago, 848 F.2d at 1153-54. Accordingly, the government asks this Court, in the interests of comity, to issue the attached order under Section 1782 granting assistance for a proceeding in Liechtenstein, appointing Assistant United States Attorney James H. Swain as commissioner, and authorizing him to take the actions necessary, including the issuance of commissioner's subpoenas, to collect the evidence requested and to adopt such procedures in the receipt of the evidence as are consistent with the intended use thereof in Liechtenstein.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By: _____
JAMES H. SWAIN
ASSISTANT UNITED STATES ATTORNEY
Court No. A5500237
99 NE Fourth Street
Miami, Florida 33132
Telephone: (305) 961-9038
Facsimile: (305) 530-7087
E-Mail Address: James.Swain@usdoj.gov

<u>COMMISSIONER'S SUBPOENA</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TO:     _____

        _____

        _____

I, Commissioner James H. Swain, an Assistant United States Attorney for the Southern District of Florida, acting pursuant to an Order of the District Court and under the authority of Title 28, United States Code, Section 1782, for the purpose of rendering assistance to Liechtenstein, command that you appear before me in Room 800, in the James Lawrence King Federal building located at 99 NE 4th Street, Miami, Florida, on _____, at ___ a.m./p.m., to provide testimony/ documents regarding an alleged violation of the laws of Liechtenstein, namely, narcotic trafficking, among other alleged violations, and that at the time and place aforesaid you provide the following:

For failure to attend and provide testimony/said documents, you may be deemed guilty of contempt and liable to penalties under the law.

Dated:

COMMISSIONER JAMES H. SWAIN
Assistant United States Attorney for the
Southern District of Florida
Telephone (305) 961-9038



# REGIERUNG DES FÜRSTENTUMS LIECHTENSTEIN

RESSORT JUSTIZ

Vaduz, 17. Juli 2002
04 KG.2001.10 RHS 2002/528
GZ/ak

## COLLINS Jeffrey B. - Internationale Rechtshilfe in Strafsachen
## KG.2001.10

Das Ressort Justiz des Fürstentums Liechtenstein beehrt sich, dem U.S. Departement of Justice ein Schreiben des Landgerichtes Vaduz vom 15. Juli 2002 samt Beilagen zu übermitteln und ersucht, für die Erledigung besorgt zu sein.

Das Ressort Justiz des Fürstentums Liechtenstein benützt auch diesen Anlass, um das Departement of Justice seiner ausgezeichneten Hochachtung zu versichern.

*Mag. Gert Zimmermann*
Juristischer Mitarbeiter

Beilage erwähnt

Einschreiben
U.S. Departement of Justice
Office of International Affairs
Criminal Division
Deborah M. Gaynus
Washington D.C. 20530
U.S.A.

Kopie:
Fürstliches Landgericht (04 KG.2001.10)



FÜRSTENTUM LIECHTENSTEIN
### FÜRSTLICHES
# LANDGERICHT

<u>04 KG.2001.10</u>
195

To the
courts or authorities with
jurisdiction for mutual legal
assistance in criminal matters
for
a)  FCC Coleman, FL, USA
b)  6001 Coconut Terrec
     Plantation, Florida, 33317 USA

| | Vaduz, 15. July 2002/ENEL |
|---|---|
| | |

## Mutual legal assistance in criminal matters

Dear Sir/Madam,

On 08.04.2002 there was issued a request for the examination of

a)   the party to the forfeiture Jeffrey B. Collins, FCC Coleman, FL, USA, and
b)   the witness William E. Elmore jun., resident at 6001 Coconut, Terrec, Plantation, Florida, 33317 United States of America.

On the application of the defence counsel of 12.07.2002, you are now requested, insofar as the procedural laws there allow, to inform the defence counsel of the party to the forfeiture, Jeffrey Collins, namely Dr. Andreas Schurti, Advocate in FL-9490 Vaduz, Zollstrasse 9, as well as the Public Prosecution Service of the Principality of Liechtenstein, of the date for the examination of the party to the forfeiture and the witness, and to enable them to participate and submit questions.

Yours faithfully,

The High Court of Liechtenstein as Criminal Court

Dr. Lothar Hagen
(President)



FÜRSTENTUM LIECHTENSTEIN

FÜRSTLICHES

# LANDGERICHT

<u>04 KG.2001.10</u>
195

To the
courts or authorities with
jurisdiction for mutual legal
assistance in criminal matters
for
a)   FCC Coleman, FL, USA
b)   6001 Coconut Terrec
      Plantation, Florida, 33317 USA

| | Vaduz, 15. July 2002/ENEL |
|---|---|
| | |

## Mutual legal assistance in criminal matters

Dear Sir/Madam,

On 08.04.2002 there was issued a request for the examination of

a)   the party to the forfeiture Jeffrey B. Collins, FCC Coleman, FL, USA, and
b)   the witness William E. Elmore jun., resident at 6001 Coconut, Terrec, Plantation, Florida, 33317 United States of America.

On the application of the defence counsel of 12.07.2002, you are now requested, insofar as the procedural laws there allow, to inform the defence counsel of the party to the forfeiture, Jeffrey Collins, namely Dr. Andreas Schurti, Advocate in FL-9490 Vaduz, Zollstrasse 9, as well as the Public Prosecution Service of the Principality of Liechtenstein, of the date for the examination of the party to the forfeiture and the witness, and to enable them to participate and submit questions.

Yours faithfully,

The High Court of Liechtenstein as Criminal Court

Dr. Lothar Hagen
(President)



FÜRSTENTUM LIECHTENSTEIN

**FÜRSTLICHES**

# LANDGERICHT

<u>04 KG.2001.10</u>
195

An die
zuständigen Gerichte oder
Behörden für Rechtshilfe in
Strafsachen
für
a)  FCC Coleman, FL, USA
b)  6001 Coconut Terrec
    Plantation, Florida, 33317 USA

|  | Vaduz, 15. Juli 2002/ENEL |
|---|---|
|  |  |

## Rechtshilfe in Strafsachen

Sehr geehrte Damen und Herren

Am 08.04.2002 erging ein Ersuchen um Einvernahme

a)   des Verfallsbeteiligten Jeffrey B. Collins, FCC Coleman, FL, USA, und
b)   des Zeugen William E. Elmore jun., wohnhaft 6001 Coconut, Terrec, Plantation, Florida, 33317 Vereinigte Staaten von Amerika.

Ueber Antrag des Verteidigers vom 12.07.2002 wird nunmehr ersucht, sofern es die dortigen Prozessgesetze zulassen, den Verteidiger des Verfallsbeteiligten Jeffrey Collins, nämlich Dr. Andreas Schurti, Rechtsanwalt in FL-9490 Vaduz, Zollstrasse 9, sowie die Fürstliche Staatsanwaltschaft vom Termin der Einvernahme des Verfallsbeteiligten bzw. des Zeugen zu verständigen und ihnen die Teilnahme und Fragestellung zu ermöglichen.

Mit dem Ausdruck der vorzüglichen Hochachtung

Fürstliches Land- als Kriminalgericht

Dr. Lothar Hagen
(Präsident)



FÜRSTENTUM LIECHTENSTEIN

**FÜRSTLICHES**
# LANDGERICHT

04 KG.2001.10
195

An die
zuständigen Gerichte oder
Behörden für Rechtshilfe in
Strafsachen
für
a)   FCC Coleman, FL, USA
b)   6001 Coconut Terrec
Plantation, Florida, 33317 USA

| | Vaduz, 15. Juli 2002/ENEL |
|---|---|
| | |

## Rechtshilfe in Strafsachen

Sehr geehrte Damen und Herren

Am 08.04.2002 erging ein Ersuchen um Einvernahme

a)   des Verfallsbeteiligten Jeffrey B. Collins, FCC Coleman, FL, USA, und
b)   des Zeugen William E. Elmore jun., wohnhaft 6001 Coconut, Terrec, Plantation, Florida, 33317 Vereinigte Staaten von Amerika.

Ueber Antrag des Verteidigers vom 12.07.2002 wird nunmehr ersucht, sofern es die dortigen Prozessgesetze zulassen, den Verteidiger des Verfallsbeteiligten Jeffrey Collins, nämlich Dr. Andreas Schurti, Rechtsanwalt in FL-9490 Vaduz, Zollstrasse 9, sowie die Fürstliche Staatsanwaltschaft vom Termin der Einvernahme des Verfallsbeteiligten bzw. des Zeugen zu verständigen und ihnen die Teilnahme und Fragestellung zu ermöglichen.

Mit dem Ausdruck der vorzüglichen Hochachtung

Fürstliches Land- als Kriminalgericht

Dr. Lothar Hagen
(Präsident)

UNITED STATES GOVERNMENT

# memorandum

DATE:

REPLY TO
ATTN OF:     June 10, 2002

SUBJECT:     AmEmbassy Bern, Switzerland

             Judicial Assistance: Criminal case against Jeffrey B. COLLINS

TO:          Ms. Deborah Gaynus, U.S. Department of Justice, Criminal Division,
             Washington, D.C. 20530


             c.c.: John Junk: Department of State, CA/OCS/ACS/EUR



             Enclosed please find a self-explanatory diplomatic note and attached
             documents from the Embassy of the Principality of Liechtenstein to
             Switzerland regarding the above judicial assistance case.  Please forward the
             note and the documents to the competent authorities in the United States.

             Thank you for your assistance.




             ACS/SDBoswell/mdc




OPTIONAL FORM NO. 10
(REV 1-80)
GSA FPMR (41 CFR) 101-11 6





## BOTSCHAFT DES FÜRSTENTUMS LIECHTENSTEIN

USA-Collins-9236/02
a.d.

The Embassy of the Principality of Liechtenstein presents its compliments to the Embassy of the United States of America and, with reference to its own note dated 9 January 2002, has the honor to transmit herewith a letter with enclosure from the Princely Court of Justice (Fürstliches Landgericht) concerning the request for legal assistance in a criminal case against **Jeffrey B. COLLINS.**

The Embassy should be grateful if the Embassy of the United States of America would arrange for the letter and its enclosure to be forwarded to the competent authorities in the United States.

The Embassy of the Principality of Liechtenstein thanks the Embassy in advance for its help and avails itself of this opportunity to renew to the Embassy of the United States of America the assurances of its highest consideration.

Bern, 13 May 2002

Enclosures



Embassy of the
United States of America
B e r n e



FÜRSTENTUM LIECHTENSTEIN

## FÜRSTLICHES
## LANDGERICHT

Aktenzeichen bitte immer anführen

04 KG.2001.10

181

An die
zuständigen Gerichte oder
Behörden für Rechtshilfe in
Strafsachen
für
a) FCC Coleman, FL, USA
b) 6001 Coconut Terrec
   Plantation, Florida, 33317 USA

Vaduz, 8. April 2002/ENEL

## Rechtshilfe in Strafsachen

Sehr geehrte Damen und Herren

Beim Fürstlichen Land- als Kriminalgericht Vaduz/Liechtenstein behängt ein Verfahren über die Verfallserklärung der in Liechtenstein liegenden Vermögenswerte der Royman Foundation bei der Centrum Bank in Vaduz sowie der Silverado Foundation, dem Wasaki Establishment, dem Profunda Etablissement sowie lautend auf Jeffrey White, jeweils bei der Liechtensteinischen Landesbank AG.

Es liegen derzeit bei der Centrum Bank AG Vermögenswerte in Höhe von USD 4'296'179,99 und bei der Liechtensteinischen Landesbank AG insgesamt Vermögenswerte von rund USD 2'300'000,--. Dazu bestehen bei beiden genannten Banken Safes lautend auf die genannten verfallsbeteiligten Stiftungen mit verschiedenen Münzen und Uhren von unbekanntem Wert wie auch Dokumenten.

Dieses Verfahren zur Verfallserklärung der genannten Vermögenswerte geht auf eine Anzeige von Dr. Walter Kieber zurück, die er als Mitglied des Stiftungsrates der Royman Foundation am 08.04.1997 erstattete. Dr. Kieber äusserte den Verdacht, dass dieses Vermögen Erlös aus strafbaren Handlungen nach der Betäubungsmittelgesetzgebung darstelle. Im Anschluss daran erstattet auch Engelbert Schreiber als Treuhänder bei der Fürstlichen Staatsanwaltschaft Anzeige mit der Begründung, dass er bereits im März 1987 ebenso im Auftrag des Jeffrey White die Silverado Foundation gegründet

habe und dass auf deren Konto bei der Liechtensteinischen Landesbank AG damals ein Betrag von rund USD 4 Mio einbezahlt worden sei. Auf Grund dieser Anzeigen wurden über Antrag der Staatsanwaltschaft sämtliche Vermögenswerte bei der Liechtensteinischen Landesbank AG und der Centrum Bank AG eingefroren. Die Sperre ist auch zum heutigen Tage noch aufrecht.

In den USA wurde gegen Jeffrey B. Collins ein Strafverfahren eingeleitet und Jeffrey B. Collins wurde vom Bezirksgericht der Vereinigten Staaten, Südlicher Bezirk des Bundesstaates Indiana, Abteilung Indianapolis zur Geschäftszahl IP 87-109-CR wegen des Vertriebes von Marihuana im Bereich von über 14'000 kg nach einem mit dem zuständigen Staatsanwalt der Vereinigten Staaten von Amerika geschlossenen Plea-Agreement zu einer Freiheitsstrafe von 23 Jahren verurteilt (Urteil des Bezirksgerichtes Südlicher Bezirk von Indiana vom 04.02.1999 wegen Anklagepunkt 12 – Betrieb einer kriminellen Unternehmung).

Die Fürstliche Staatsanwaltschaft bringt nunmehr in ihrer Anklageschrift vor, dass das im Fürstentum Liechtenstein liegende Vermögen Erlös aus diesen Drogenhandelsgesellschaften darstellt bzw. die Wertgegenstände in den Safes ebenfall aus dem Erlös aus Drogenhandelsgeschäften angeschafft wurden und daher gemäss § 20 b des Strafgesetzbuches dem Verfall unterliegen, weil sie aus einem Verbrechen nach Art 20 Betäubungsmittelgesetz stammen.

Da sich Jeffrey B. Collins in Haft befindet und zu einer Schlussverhandlung vor dem Fürstlichen Landgericht nicht erscheinen kann, ist er als Verfallsbeteiligter zur Anklageschrift einzuvernehmen.

Es wird daher ersucht, Jeffrey B. Collins, FCC Coleman, FL, USA, als Verfallsbeteiligten einzuvernehmen, wobei ihm die Fragen aus der beiliegenden Fragenliste gestellt werden mögen. Jeffrey B. Collins ist zu belehren, dass er in diesem Verfahren zur Verfallserklärung seiner Vermögenswerte und der genannten Stiftungen wie ein Angeklagter zu behandeln ist und daher das Recht hat, seine Aussage auch zur Gänze zu verweigern.

Darüber hinaus hat das Fürstliche Land- als Kriminalgericht auch noch Beweis zugelassen durch Einvernahme des Zeugen William E. Elmore jun., wohnhaft 6001 Coconut, Terrec, Plantation, Florida, 33317 Vereinigte Staaten von Amerika, zum Beweise dafür, dass er gemeinsam mit Jeffrey B. Collins mehrere Immobilientransaktionen erfolgreich abwickelte, aus welchem Collins erhebliche Gewinne zugeflossen sind und dass diese Vermögenswerte und nicht solche aus dem Erlös von Betäubungsmitteldelinquenz nach Liechtenstein geflossen sind.

Der Zeuge möge vor seiner Einvernahme nach den beiliegenden Bestimmungen der §§ 107 und 108 der Strafprozessordnung belehrt werden. Es mögen ihm nach der Befragung zu seinen Personalien die in der Fragenliste beiliegenden Fragen gestellt werden.

Mit dem Ausdruck der vorzüglichen Hochachtung

Fürstliches Land- als Kriminalgericht

Dr. Lothar Hagen
(Präsident)



FÜRSTENTUM LIECHTENSTEIN

### FÜRSTLICHES
# LANDGERICHT

Aktenzeichen bitte immer anführen

04 KG.2001.10

zu ON 181

# FRAGENLISTE
## Jeffrey B. Collins

1.) Machen Sie Angaben zu Ihrer Person (Geburtsdatum, Geburtsort, Vor- und Zuname der Eltern, Beruf oder Beschäftigung vor ihrer Verhaftung, Wohnort vor der Verhaftung, Schulbildung und berufliche Ausbildung)

2.) Sind Sie ausser jener Verurteilung auf Grund derer Sie nunmehr in Haft sind, vorbestraft?

3.) Geben Sie eine möglichst genaue Darstellung des Geldflusses jenes Vermögens, das nunmehr auf Konten der Royman Foundation bzw. der Silverado Foundation, Wasaki Establihsment und lautend auf Jeffrey B. White bei der Liechtensteinischen Landesbank und der Centrum AG Vaduz, liegen; wann auf welche Weise wurde diese Vermögenswerte nach Liechtenstein transferiert, wo waren diese Vermögenswerte zuvor deponiert (Kcnten, Banken) und worauf gehen all diese Vermögenswerte letztlich zurück?

4.) Gibt es noch Urkunden über die Herkunft dieses Vermögens?

5.) Woher stammen die Wertgegenstände, die in den Safes des Profunda Etablissement deponiert sind?

6.) Stammen diese Vermögenswerte aus dem Handel im weitesten Sinne mit Betäubungsmitteln (Marihuana), wenn ja, aus welcher Zeit, oder stammen die Vermögenswerte aus ihrer normalen beruflichen Tätigkeit, wenn ja, aus welcher Zeit? Sind noch Buchhaltungsunterlagen vorhanden?

7.) Ist auch Geld, das ursprünglich aus dem Vermögen ihrer Frau Debra Collins stammt, in diesem Vermögen enthalten, wenn ja, woher stammt es, wie ist der Geldfluss dieses Vermögens, das ursprünglich Debra Collins zuzurechnen ist.

FURSTENTUM LIECHTENSTEIN

FÜRSTLICHES
LANDGERICHT

Aktenzeichen bitte immer anführen

04 KG.2001.10
zu ON 181

# FRAGENLISTE
## William E. Elmore jun.

1.) Wie lauten Ihre Personalien (Vor- und Zuname, Geburtsdatum, Geburtsort, Familienstand, Religionsbekenntnis, Beruf oder Beschäftigung, Adresse). Sind Sie mit dem Verfallsbeteiligten Jeffrey B. Collins verwandt oder verschwägert?

2.) Kennen Sie Jeffrey B. Collins, woher kennen Sie ihn, wissen Sie etwas über Aktivitäten des Jeffrey B. Collins im Handel mit Marihuana, wenn ja, was wissen Sie darüber?

3.) Haben Sie beruflich mit Jeffrey B. Collins zusammen gearbeitet, wenn ja, auf welchem Gebiet, welche Aktivitäten wurden in welcher Zeit gesetzt?

4.) Wissen Sie welchen Verdienst Jeffrey B. Collins aus seiner beruflichen Tätigkeit hatte, wissen Sie, was mit dem Einkommen des Jeffrey B. Collins geschah, insbesondere, ob es ins Ausland geschafft wurde, wenn ja, wohin.

## § 107

¹) Von der Verbindlichkeit zur Ablegung eines Zeugnisses sind befreit:

1. Die Angehörigen des Beschuldigten (§ 72 StGB), wobei die durch eine Ehe begründete Eigenschaft einer Person als Angehöriger aufrecht bleibt, auch wenn die Ehe nicht mehr besteht;

2. Verteidiger über das, was ihnen in dieser Eigenschaft vom Beschuldigten anvertraut worden ist;

3. Rechtsanwälte, Rechtsagenten, Buchprüfer sowie Patentanwälte über das, was ihnen in dieser Eigenschaft von ihrem Vollmachtgeber anvertraut worden ist.

²) Steht eine als Zeuge vorgeladene Person nur zu einem von mehreren Beschuldigten in einem der vorstehend erwähnten Verhältnisse, so kann sie sich des Zeugnisses hinsichtlich der anderen nur dann entschlagen, wenn eine Sonderung der Aussagen, welche die letzteren betreffen, nicht möglich ist.

³) Der Untersuchungsrichter hat die unter Absatz 1 Ziffer 1 bezeichneten Personen, wenn sie als Zeugen vorgerufen werden, vor ihrer Vernehmung oder doch sobald ihm ihr Verhältnis zu dem Beschuldigten bekannt wird, über ihr Recht, sich des Zeugnisses zu entschlagen, zu belehren und ihre darüber erfolgte Erklärung in das Protokoll aufzunehmen. Hat der Zeuge auf sein Recht, sich des Zeugnisses zu entschlagen, nicht ausdrücklich verzichtet, so ist seine Aussage nichtig.

## § 108

Wenn die Ablegung des Zeugnisses oder die Beantwortung einer Frage für den Zeugen oder einen seiner Angehörigen (§ 107 Abs. 1 Ziff. 1) Schande oder die Gefahr strafgerichtlicher Verfolgung oder eines unmittelbaren und bedeutenden vermögensrechtlichen Nachteils mit sich brächte, und er deshalb das Zeugnis verweigert, so soll er nur zum Zeugnis verhalten werden, wenn dies wegen der besonderen Bedeutung seiner Aussage unerlässlich ist. § 107 Absatz 3 erster Satz gilt sinngemäss.

Betäubungsmittelgesetz (BMG)                                         **812.120**

## Art. 18

1) Betäubungsmittel müssen gesondert von allen andern Waren in dafür geeigneten Räumen unter Verschluss aufbewahrt werden.

2) Betäubungsmittel dürfen nur unter Angabe der Sachbezeichnung in den Handel gebracht werden.

3) Jede an das Publikum gerichtete Anpreisung von Betäubungsmitteln ist untersagt.

4) Die Regierung erlässt mit Verordnung nähere Bestimmungen über die Aufbewahrung, Bezeichnung und Anpreisung von Betäubungsmitteln sowie über die Angaben in Bepackungsprospekten.

## Art. 19

1) Die der Kontrolle unterstehenden Firmen, Personen, Krankenanstalten und Institute haben den Kontrollorganen die Anbauflächen, Fabrikations-, Verkaufs- und Lagerräume zugänglich zu machen, die Bestände an Betäubungsmitteln und alle dazu gehörenden Belege vorzuweisen. Sie sind gehalten, jederzeit die von der Kontrollstelle für Arzneimittel verlangten Auskünfte zu erteilen.[1]

2) Die Personen, denen die Kontrolle des Verkehrs mit Betäubungsmitteln übertragen ist, sind zur Geheimhaltung der dabei gewonnenen Kenntnisse verpflichtet.

## IV. Strafbestimmungen

## Art. 20

1) Vom Landgericht wird wegen Vergehens mit Freiheitsstrafe bis zu drei Jahren oder mit Geldstrafe bis 360 Tagessätzen bestraft, wer vorsätzlich:

a)  unbefugt alkaloidhaltige Pflanzen oder Hanfkraut zur Gewinnung von Betäubungsmitteln anbaut;

b)  unbefugt Betäubungsmittel herstellt, auszieht, umwandelt oder verarbeitet;

---

1  Art. 19 Abs. 1 abgeändert durch LGBl. 2000 Nr. 16.

**812.120**                                                    Betäubungsmittelgesetz (BMG)

c) sie unbefugt lagert, versendet oder befördert;

d) sie unbefugt anbietet, verteilt, verkauft, vermittelt, verschafft, verordnet, in Verkehr bringt oder abgibt;

e) sie unbefugt besitzt, aufbewahrt, kauft oder sonstwie erlangt;

f) hiezu Anstalten trifft;

g) den unerlaubten Verkehr mit Betäubungsmitteln finanziert oder seine Finanzierung vermittelt;

h) öffentlich zu Betäubungsmittelkonsum auffordert oder öffentlich Gelegenheit zum Erwerb oder Konsum von Betäubungsmitteln bekanntgibt.

In schweren Fällen ist der Täter wegen Verbrechens mit Freiheitsstrafe von einem bis zu zwanzig Jahren zu bestrafen.[1]

2) Ein schwerer Fall liegt insbesondere vor, wenn der Täter:

a) weiss oder annehmen muss, dass sich die Widerhandlung auf eine Menge von Betäubungsmitteln bezieht, welche die Gesundheit vieler Menschen in Gefahr bringen kann,

b) als Mitglied einer Bande handelt, die sich zur Ausübung des unerlaubten Betäubungsmittelverkehrs zusammengefunden hat,

c) durch gewerbsmässigen Handel einen grossen Umsatz oder einen erheblichen Gewinn erzielt.

3) Werden die Widerhandlungen nach Abs. 1 fahrlässig begangen, so wird der Täter vom Landgericht wegen Vergehens mit Freiheitsstrafe bis zu einem Jahr oder Geldstrafe bis zu 360 Tagessätzen bestraft.[2]

Art. 20a[3]

Aufgehoben

---

[1] Art. 20 Abs. 1 abgeändert durch LGBl. 2000 Nr. 258.

[2] Art. 20 Abs. 3 abgeändert durch LGBl. 1988 Nr. 38.

[3] Art. 20a aufgehoben durch LGBl. 2000 Nr. 258.

*Auszug aus dem*

*Strafgesetzbuch*

### § 20b

*Verfall*

1) Vermögenswerte, die der Verfügungmacht einer kriminellen Organisation (§ 278a) unterliegen, sind für verfallen zu erklären.

2) Vermögenswerte, die aus einer mit Strafe bedrohten Handlung stammen, sind für verfallen zu erklären, wenn die Tat, aus der sie herrühren, auch durch die Gesetze des Tatorts mit Strafe bedroht ist, aber nach den §§ 62 bis 65 nicht den liechtensteinischen Strafgesetzen unterliegt, und kein Fiskaldelikt darstellt.

PRINCIPALITY OF LIECHTENSTEIN

THE HIGH COURT
OF LIECHTENSTEIN

Please always quote case number
04.KG.2001.10
181

To the
courts or authorities with
jurisdiction for mutual legal
assistance in criminal matters
for
a)  FCC Coleman, FL, USA
b)  6001 Coconut Terrec
    Plantation, Florida, 33317 USA

Vaduz, 8 April 2002/ENEL

## Mutual legal assistance in criminal matters

Dear Sir/Madam,

At the High Court of Liechtenstein as Criminal Court, Vaduz/Liechtenstein, there are pending proceedings concerning the declaration of forfeiture of the assets, located in Liechtenstein, of the Royman Foundation at the Centrum Bank in Vaduz, and of the Silverado Foundation, the Wasaki Establishment, the Profunda Etablissement, and in the name of Jeffrey White, in each case at the Liechtensteinische Landesbank AG.

There are currently assets of USD 4,296,179.99 located at the Centrum Bank AG and total assets of around USD 2,300,000.00 at the Liechtensteinische Landesbank AG. In addition, at both these banks there are, in the name of the abovementioned foundations involved in the forfeiture proceedings, safes with various coins and watches of an unknown value, as well as documents.

These proceedings for a declaration of forfeiture of the abovementioned assets originate from information from Dr. Walter Kieber, which he provided as a member of the board of trustees of the Royman Foundation on 08.04.1997. Dr. Kieber expressed the suspicion that these assets represented proceeds from criminal acts under the legislation on narcotic drugs. Following this, Engelbert Schreiber as trustee also provided information to the Public Prosecution Service of the Principality of Liechtenstein, based on the fact that back in March 1987, likewise by order of Jeffrey White, he had formed the Silverado Foundation and that at the time a sum of around USD 4 million had been paid into its account at the Liechtensteinische Landesbank AG. On the basis of this information, on the application of the Public Prosecution

Service all assets at the Liechtensteinische Landesbank AG and at the Centrum Bank AG were frozen. The block is also still maintained to the present day.

In the USA criminal proceedings were initiated against Jeffrey B. Collins and, following a Plea Agreement concluded with the competent prosecuting attorney of the United States of America, he was sentenced to a term of imprisonment of 23 years (judgment of the District Court of the Southern District of Indiana of 04.02.1999 under count 12 - operation of a criminal enterprise) by the District Court of the United States, Southern District of the Federal State of Indiana, Indianapolis Division. Case Number IP 87-109-CR, for the distribution of marijuana in a quantity of over 14,000 kg.

In its indictment the Public Prosecution Service of the Principality of Liechtenstein now submits that the assets located in the Principality of Liechtenstein represent proceeds from these drug trafficking companies, and that the valuables in the safes were likewise procured from the proceeds of drug trafficking operations, and are therefore subject to forfeiture pursuant to § 20b of the Criminal Code because they derive from a crime under Art. 20 of the Law on Narcotic Drugs.

Since Jeffrey B. Collins is in custody and cannot appear at a final hearing before the High Court of Liechtenstein, he is to be examined as a party to the forfeiture under the indictment.

It is therefore requested that Jeffrey B. Collins, FCC Coleman, FL, USA, be examined as a party to the forfeiture, whereby he should be asked the questions from the attached list of questions. Jeffrey B. Collins is to be advised that in these proceedings for a declaration of forfeiture of his assets and the said foundations, he is to be treated as an accused party and that therefore he also has the right to refuse in full to make a statement.

In addition, the High Court of Liechtenstein as Criminal Court has also admitted evidence through the examination of the witness William E. Elmore jun., resident at 6001 Coconut, Terrec, Plantation, Florida, 33317 United States of America, as evidence that together with Jeffrey B. Collins he successfully completed several real estate transactions, from which significant profits accrued to Collins and that these assets and not those from the proceeds of narcotic drugs offences flowed into Liechtenstein.

Prior to his examination the witness should be advised in accordance with the attached provisions of §§ 107 and 108 of the Criminal Procedure Code. After being asked about his personal details, he should be asked the questions included in the list of questions.

Yours faithfully,

The High Court of Liechtenstein as Criminal Court


Dr. Lothar Hagen
(President)

PRINCIPALITY OF LIECHTENSTEIN

THE HIGH COURT
OF LIECHTENSTEIN

Please always quote case number
04 KG.2001.10
re ON 181

## LIST OF QUESTIONS
**Jeffrey B. Collins**

1.) Provide information about yourself (date of birth, place of birth, first name and surname of parents, occupation or employment prior to your arrest, place of residence prior to arrest, school education and vocational training)

2.) Apart from the conviction on the basis of which you are now in custody, have you previously been convicted?

3.) Give as precise a description as possible of the flow of cash from those assets now lying in accounts of the Royman Foundation and the Silverado Foundation, Wasaki Establishment and in the name of Jeffrey B. White at the Liechtensteinische Landesbank and Centrum AG Vaduz; when and in what manner were these assets transferred to Liechtenstein, where were these assets deposited before (accounts, banks) and where do all these assets ultimately originate from?

4.) Are there still documents relating to the origin of these assets?

5.) Where do the valuables originate from which are deposited in the safes of the Profunda Etablissement?

6.) Do these assets originate from trade in the broadest sense in narcotic drugs (marijuana)? If so, from which time, or do the assets originate from your normal professional activity, and if so from which time? Are book-keeping documents still available?

7.) Is money which originally stems from the assets of your wife Debra Collins also included in these assets, and if so, where does it originate from and what form does the flow of cash take which is originally to be imputed to Debra Collins?

PRINCIPALITY OF LIECHTENSTEIN

THE HIGH COURT
OF LIECHTENSTEIN

Please always quote case number
04 KG.2001.10
re ON 181

## LIST OF QUESTIONS
### William E. Elmore jun.

1.) What are your personal data (first name and surname, date of birth, place of birth, marital status, religious denomination, occupation or employment, address)? Are you related by blood or marriage to the party to the forfeiture proceedings, Jeffrey B. Collins?

2.) Do you know Jeffrey B. Collins, from where do you know him, do you know anything about the activities of Jeffrey B. Collins with regard to dealing in marijuana, and if so, what do you know about this?

3.) Have you worked together with Jeffrey B. Collins professionally, and if so, in which area of work, and which activities were undertaken at which time?

4.) Do you know what earnings Jeffrey B. Collins made from his professional activity and do you know what happened with the income of Jeffrey B. Collins, and in particular whether it was transferred abroad , and if so, to where?

## Art. 18

1) Narcotic drugs must be stored separately from all other goods under lock and key on premises suitable for the purpose.

2) Narcotic drugs shall only be permitted to be put onto the market if their specific designation is indicated.

3) Any extolment of narcotic drugs directed towards the public is prohibited.

4) The Government shall issue by way of ordinance more precise provisions concerning the storage, designation, and extolment of narcotic drugs as well as concerning the information in packaging leaflets.


## Art. 19

1) The firms, persons, public hospitals and institutes subject to supervision shall make accessible to the supervisory bodies the areas under cultivation and the manufacturing, sales and storage premises, and disclose the stocks of narcotic drugs and all documentary material pertaining thereto. They shall be required at all times to provide the information demanded by the supervisory authority for pharmaceuticals.[1]

2) The persons to whom the supervision of trade in narcotic drugs is assigned shall be under an obligation to keep secret the knowledge thereby acquired.


# IV. Penal Provisions


## Art. 20

1) Any person who with intent:

a) without authority cultivates plants containing alkaloid or hemp for the purpose of producing narcotic drugs;

b) without authority manufactures, extracts, converts or processes narcotic drugs;

c) without authority stores, ships or conveys them;

d) without authority offers them for sale, distributes, sells, acts as intermediary for, procures or prescribes them, puts them into circulation or passes them on;

e) without authority possesses, keeps, purchases or obtains them in any other manner;

f) takes measures for this purpose;

---

Art. 19 paragraph 1 amended by LGBl. (Liechtenstein State Gazette) 2000 No. 76

g) finances the prohibited dealing with narcotic drugs or negotiates its financing;

h) publicly incites the consumption of narcotic drugs or publicly announces the opportunity to acquire or consume narcotic drugs

shall be sentenced by the High Court of Liechtenstein for a criminal offence to a term of imprisonment of up to three years or to pay a fine of up to 360 daily rates.

In serious cases the perpetrator shall be sentenced for a criminal offence to a term of imprisonment of between one and twenty years.[1]

2) There shall be deemed to be a serious case, in particular if the perpetrator:

a) knows or must assume that the contravention relates to a quantity of narcotic drugs which may imperil the health of many people,

b) acts as a member of a group which has come together to carry out the illegal traffic of the narcotic drug,

c) achieves a large turnover or a significant profit as a result of commercial trade.

3) If the contraventions pursuant to paragraph 1 are committed negligently, the perpetrator shall be sentenced by the High Court of Liechtenstein for a criminal offence to a term of imprisonment of up to one year or to pay a fine of up to 360 daily rates.[2]

Art. 20a[3]

Repealed

[1] Art. 20, paragraph 1 amended by LGBl. 2000. No 258.

[2] Art 20. paragraph 3 amended by LGBl 1988. No 38

[3] Art 20a repealed by LGBl 2000. No 258

Criminal Code of the Principality of Liechtenstein

## § 20b

### *Forfeiture*

1) Assets which are subject to the power of disposition of a criminal organisation (§ 278a) shall be declared forfeited.

2) Assets deriving from an action carrying a penalty shall be declared forfeited if the offence from which they stem also carries a penalty under the laws of the place of the commission of the offence, but pursuant to §§ 62 to 65 are not subject to the criminal laws of Liechtenstein and do not represent a fiscal offence.

## § 107

¹) The following shall be released from the obligation to give evidence:

1. The relatives of the accused (§ 72 of the Criminal Code), whereby the capacity of a person as a relative substantiated by virtue of a marriage shall be maintained even if the marriage no longer exists;

2. Defence counsel, with regard to what has been entrusted to them in this capacity by the accused;

3. Advocates, legal agents, auditors and patent attorneys, with regard to what has been entrusted to them in this capacity by their principal.

²) If a person summoned as a witness stands in one of the above mentioned relationships with only one of several accused, he may only decline to give evidence with regard to the others if a separation of the statements which relate to the latter is not possible.

³) If they are called as witnesses, the investigating judge shall, prior to their examination or in any event as soon as he becomes aware of their relationship to the accused, advise the persons designated under paragraph 1, subparagraph 1 of their right to decline to give evidence and have entered in the record their declaration made in this connection. If the witness has not expressly waived his right to decline to give evidence, his statement shall be null and void.

## § 108

If the giving of evidence or the answering of a question would cause discredit or the risk of criminal prosecution or a direct and significant pecuniary disadvantage for the witness or one of his relatives (§ 107, paragraph 1, subparagraph 1), and he therefore refuses to give evidence, he should only be required to give evidence if this is indispensable due to the particular significance of his statement. § 107, paragraph 3, sentence 1 shall apply mutatis mutandis